Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR VINCENT BARNHILL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **UNIVERSAL REHEARSAL** | § | |
| **PARTNERS, LTD.,** | § | **CASE NO. 22-31966-MVL** |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |

| | | |
|---|---|---|
| **UNIVERSAL REHEARSAL** | § | |
| **PARTNERS, LTD. and** | § | |
| **JOHN KIRTLAND** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 23-03011-mvl** |
| | § | |
| **VINCE EDWARD BARNHILL** | § | |
| **Defendant.** | § | |

## BRIEF SUPPORTING RESPONSE IN OPPOSITION TO PLAINTIFF JOHN KIRTLAND'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF SAME

# **TABLE OF CONTENTS**

I.      BACKGROUND .................................................................................................1

        a.      Deemed admissions may be withdrawn..................................................1

        b.      Kirtland's Statement of Uncontroverted Material Facts is replete with "facts"
                that were and have been controverted by Barnhill and/or his counsel in earlier
                pleadings .................................................................................................4

II.     STATEMENT OF UNCONTROVERTED AND DISPUTED MATERIAL FACTS........5

III.    ARGUMENTS AND AUTHORITIES.............................................................23

IV.     PRAYER..................................................................................................27

Brief Supporting Response in Opposition to Plaintiff John Kirtland's Motion
for Partial Summary Judgment and Brief in Support of Same

i

## TABLE OF AUTHORITIES

*Cases*

*Amedisys, Inc. v. Kingwood Home Health Care, LLC*,
437 S.W.3d 507 (Tex. 2014) ................................................................................2, 26

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)). ...........................................24

*Bennu Oil & Gas, LLC v. Bluewater Indus., L.P. (In re ATP Oil & Gas Corp.)*,
Nos. 12-36187, 14-3001, 2015 Bankr. LEXIS 2350 (Bankr. S.D. Tex. July 15, 2015)...............24

*Gentry v. TJX Cos.*,
No. 23-5020, 2024 U.S. Dist. LEXIS 21179 (E.D. La. Feb. 7, 2024). ....................................2, 26

*Heritage Org., LLC v. Canada (In re Heritage Org., LLC)*,
Nos. 3:06-CV-0578-H, 304-35574-bjh-11, 04-03338, 2006 U.S. Dist. LEXIS 69288 (N.D. Tex.
Sep. 14, 2006) ...........................................................................................25

*Hunt v. Cromartie*,
526 U.S. 541, 119 S. Ct. 1545, 143 L. Ed.2d 731 (1999)...........................................23

*In re Carbo Ceramics*,
Nos. 20-31973, 21-3031, 2023 Bankr. LEXIS 984 (Bankr. S.D. Tex.
Apr. 12, 2023) ......................................................................................24, 25

*Marino v. King*,
355 S.W.3d 629 (Tex. 2011)..........................................................................26

*McConnell v. Southside Indep. Sch. Dist.*,
858 S.W.2d 337 (Tex. 1993)). ......................................................................2

*Mugworld, Inc. v. G.G. Marck & Assocs.*,
563 F. Supp. 2d 654 (E.D. Tex. 2007) ...........................................................23, 24

*Nelson v. Nationwide Mut. Ins. Co.*,
No. 3:11-cv-223-DPJ-FKB, 2012 U.S. Dist. LEXIS 13809 (S.D. Miss. Feb. 6, 2012) ...............27

*Ragas v. Tennessee Gas Pipeline Co.*,
136 F.3d 455 (5th Cir. 1998) ......................................................................24

*Ramirez v. Noble Energy, Inc.*,
521 S.W.3d 851 (Tex. App. 2017)..................................................................2

Brief Supporting Response in Opposition to Plaintiff John Kirtland's Motion
for Partial Summary Judgment and Brief in Support of Same

ii

*Underwood v. Colony Bank*,
362 Ga. App. 548, 553 S.E.2d 535 (2022)...................................................................................24

*Wheeler v. Green*,
157 S.W.3d 439 (Tex. 2005) (per curiam)...................................................................................26

## Rules

Fed. R. Civ. P 56(c) ..............................................................................................................23

Fed. R. Civ. P. 81(c)(2) .........................................................................................................27

## Statutes

Tex. Civ. Prac. & Rem. Code § 38.001(b)(8). ......................................................................27

Tex. Civ. Prac. & Rem. Code § 38.003. ................................................................................27

## Other Authorities

Oxford English Dictionary (online), July 2023,
https://doi.org/10.1093/OED/2277034969 ...........................................................................4

Collins English Dictionary (online), 2024,
https://www.collinsdictionary.com/us/dictionary/english/uncontroverted. ......................................4

Brief Supporting Response in Opposition to Plaintiff John Kirtland's Motion
for Partial Summary Judgment and Brief in Support of Same

iii

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

COMES NOW Vince Barnhill, Defendant in the above titled and numbered adversary case, and files this his *Brief Supporting Response in Opposition to Plaintiff John Kirtland's Motion for Summary Judgment and Brief in Support of Same* (Dkt. Nos. 53 and 54, respectively) ("Response" and "Motion," respectively), and in support thereof would show unto the Court as follows.

## I.      BACKGROUND

***Deemed Admissions May Be Withdrawn***

1.      Plaintiff John Kirtland ("Plaintiff" or "Kirtland") asserts that Defendant Vince Barnhill ("Defendant" or "Barnhill") failed to timely respond to requests for admission served on Barnhill's prior counsel in the case styled as *Universal Rehearsal Partners, Ltd. v. Barnhill* (Case No. DC-22-00172 filed in the 191st Judicial District Court, Dallas County, Texas) ("Second State Court Case").

2.      Kirtland's counsel served his client's Requests for Admission on Barnhill's counsel in that case on July 5, 2022, with a deadline for response on August 4, 2022.  Barnhill's counsel, who purportedly believed he had served such responses timely, actually served his responses on Kirtland's counsel on August 9, 2022 (i.e. 5 days late) as indicated on said responses.  Kirtland's counsel's assertion that such responses were served on August 11, 2022 (i.e. 7 days late) is untrue. Regardless of whether such Responses were served 5 days or 7 days late, it is notable that Kirtland's counsel never complained to Barnhill's counsel of such late service.

3.      It is also important to note that deemed admissions may be withdrawn, and federal district courts favor such withdrawal "as it will allow for resolution on the merits rather then procedural error and does not prejudice Plaintiff[,]" particularly since Kirtland's counsel had

received such responses only 5 days late, and when the Second State Court case was in its infancy.[1]

Under Texas law, where no evidence is presented "that withdrawal of the deemed admissions

would cause it undue prejudice or that withdrawal would not serve presentation of the merits," a

court should permit the withdrawal of deemed admissions.[2]  Furthermore, under Texas law, "[a]

traditional motion for summary judgment 'must stand or fall on [its] own merits, and the non-

movant's failure to answer or respond cannot supply by default the summary judgment proof

necessary to establish the movant's right to judgment.'"[3]  Here, Kirtland's counsel has produced no

evidence of any undue prejudice with regard to the minimally-late-filed Responses to Requests for

Admissions, and Barnhill's counsel intends to file such a *Motion for Withdrawal of Deemed

Admissions* contemporaneously with the filing of the instant Response.

    4.    Furthermore, given the fact that Barnhill's late-filed answer was stricken, the

assertion that "all allegations in the Complaint are deemed admitted" is false.  Those allegations

had already previously been denied in state court litigation.

    5.    On November 15, 2021, Kirtland filed suit against Barnhill in Cause No. DC-21-

16507 in the 193rd Judicial District Court, Dallas County, Texas ("First State Court Case"),

alleging certain causes of action for  (1) Breach of Contract; (2) Breach of Fiduciary Duty; (3)

Breach of Statutory Duty of Loyalty; (4) Breach of Statutory Duty of Care; (5) Defalcation; (6)

Declaratory Judgment and Expulsion of Barnhill as General Partner; (7) Declaratory Judgment

that Barnhill is not entitled to indemnification; (8) Declaratory Judgment that the Partnership must

adjust capital accounts; (9) Action for Accounting; (10) Trespassing; and (11) Constructive Trust.

---

[1] *Gentry v. TJX Cos.*, No. 23-5020, 2024 U.S. Dist. LEXIS 21179, at *12 (E.D. La. Feb. 7, 2024).
[2] *Ramirez v. Noble Energy, Inc.*, 521 S.W.3d 851, 862 (Tex. App. 2017).
[3] Id. (citing *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511-12 (Tex. 2014) itself quoting *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993)).

On January 11, 2022, Kirtland caused the Second State Court Case to be filed wherein the exact same causes of action were asserted on behalf of Universal Rehearsal Partners ("URP").  After timely filing both an Original and First Amended Answer to that suit, Barnhill timely filed his *Second Amended Original Answer and Counterclaim* to the Petition in the First State Court Case on October 17, 2022.  Barnhill timely filed his Original Answer in the Second State Court Case on February 14, 2022.  The URP and Kirtland cases were both then removed to this Court as Adversary Cases 23-03011 and 23-03012, respectively.

6.      After removal of said cases, Kirtland then consolidated the alleged causes of action into a single *Second Amended Complaint* Against Vince Barnhill in which the Breach claims (i.e. those for Contract, Fiduciary Duty, Statutory Duty of Loyalty, Statutory Duty of Care), Defalcation, and Declaratory Judgment regarding Adjustment of Capital Accounts were reasserted; and the cause for Declaratory Judgment and Expulsion of Barnhill as General Partner was renamed as Declaratory Judgment regarding Barnhill's Wrongful Conduct (which asserted the same operational facts).  The only new cause of action asserted in the *Second Amended Complaint* was that of Denuding which asserted certain allegations and facts denied by Barnhill in his Answers in each of the aforementioned cases.  Four causes originally asserted in the First and Second State Court Cases (i.e. causes of action 7, 9, 10, and 11 listed *supra*) were not re-alleged. Essentially, all causes of action and/or the facts and allegations used to support them were previously answered by Barnhill.  The fact that Barnhill did not timely answer identical allegations in the third case in which they were alleged (i.e. in the instant adversary case) is irrelevant as they had previously been answered timely in the two State Court Cases removed to this Court.

7.      It is also important to note that the Notice of Assignment of Derivative Standing (Dkt. No. 158 in the underlying bankruptcy) states that subsequent to the removal of the two state

court cases to this Court as the instant adversary case, the Trustee's grant of derivative standing was "limited to claims and causes of action asserted by Kirtland against Barnhill and Barnhill against Kirtland that will affect the administration of their respective claims and interest against and in the Trust.  Accordingly, resolution of such of the Barnhill and Kirtland Claims shall assist with the administration of all remaining claims against the Trust."[4]  It is apparent from the wording of this Assignment of Derivative Standing that it was restricted to claims that had already been asserted at the time of its filing and did not provide for the assertion of any new claims not previously asserted, i.e. for Denuding as asserted by Kirtland in his Second Amended Complaint.

8.      Finally, the *Scheduling Order* (Dkt. No. 15) entered by the Court in the instant adversary case specifically states with respect to amendment of complaints that Kirtland and Barnhill "shall have 30 days after entry of this Scheduling Order to amend their complaints and/or counterclaims to assert certain *estate causes of action* in accordance with the Notice of Assignment of Derivative Standing [Dkt. #158] filed in the Bankruptcy Case (the 'Amended Complaint Deadline') (emphasis added)."  This *Scheduling Order* makes no provision for Kirtland to add any cause of action that he, as an individual, may have wished to bring.  To that extent, the addition of a cause of action for Denuding in the Second Amended Complaint file by Kirtland (and not for or on behalf of the bankruptcy estate) is improper and violative of the *Scheduling Order* and should not be considered.

***Kirtland's Statement of Uncontroverted Material Facts is replete with "facts" that were and have been controverted by Barnhill and/or his counsel in earlier pleadings.***

9.      Kirtland mischaracterizes to this Court that certain "material facts" are "uncontroverted," i.e. that the truth or validity of which is neither disputed nor denied,[5] or that they

---

See [4] Dkt. No. 158 (filed in the Bankruptcy Case 23-31966) at paragraph 9.
[5] OXFORD ENGLISH DICTIONARY, July 2023, https://doi.org/10.1093/OED/2277034969.

are "lacking controversy or undisputed."[6]  Most, if not all of the mischaracterized "material facts" are merely rehashed false allegations from Kirtland's *Second Amended Complaint*, which were denied in Barnhill's Answer thereto, and which were simply restated in Kirtland's *Brief in Support of Kirtland's Motion for Partial Summary Judgment* ("Brief") (Dkt. No. 54).

10.     Notably Kirtland fails to acknowledge, or even mention, that his own actions between the formation of the Partnership and execution of the Limited Partnership Agreement ("LPA") up to the expulsion of Barnhill as General Partner twenty years later in contravention of the provisions of the LPA ratified certain of Barnhill's actions and/or conduct with respect to common management practices actually used by both Barnhill and Kirtland in the Partnership business, and which effectively superseded and voided those provisions in the LPA from being enforceable, particularly those dealing with (1) the "Major Decisions" concerning budget development and approval, compensation, and hiring, firing and payment to employees and agents of the Partnership; (2) the manner in which major decisions are "Approved by the Partners."

11.     While certain facts asserted by Kirtland in his Brief are admitted as true, Barnhill denies all of the critical allegations asserted in Kirtland's Brief, more particularly as follows.

## II.      STATEMENT OF UNCONTROVERTED AND DISPUTED MATERIAL FACTS

12.     Barnhill admits the allegation in paragraph 7 of the Brief that Universal Rehearsal Partners, Ltd. (the "Partnership") was a Texas limited liability partnership formed in 2001.

13.     Barnhill admits the allegation in paragraph 8 of the Brief as to the purpose for which the Partnership was formed only to the extent provided in Sections 1.1 and 2.4 of the LPA.

---

[6] COLLINS ENGLISH DICTIONARY, 2024, https://www.collinsdictionary.com/us/dictionary/english/uncontroverted.

14.     Barnhill admits the allegation in paragraph 9 of the Brief concerning the execution of the LPA to "document their general arrangement[,]" noting that such agreement constituted the "general arrangement" as of the time it was executed on September 26, 2000.

15.     Barnhill admits the allegation in paragraph 10 of the Brief that he executed such LPA.

16.     Barnhill admits the allegations in paragraph 11 of the Brief that he was the General Partner of the Partnership until the referenced date of his removal as such, and that he owned a fifty percent (50%) interest in the Partnership.

17.     Barnhill admits the allegation in paragraph 12 of the Brief that Kirtland was Limited Partnership, and owned the remaining fifty percent (50%) interest in the Partnership.

18.     Barnhill admits the allegation in paragraph 13 of the Brief concerning his operational responsibilities to the extent of Section 4.1 of the LPA as of the date of execution of the LPA.

19.     Barnhill admits the allegation in paragraph 14 of the Brief concerning approval by the Partner of all Major Decisions to the extent of the language of Sections 1.1 and 4.3 of the LPA. Notably neither of those provisions calls for approval of Major Decisions to be in writing.

20.     Barnhill admits the allegation in paragraph 15 of the Brief that Section 4.5 of the LPA required him to prepare and submit an annual budge to Kirtland to be "Approved by the Partners."

21.     Barnhill denies the allegation in paragraph 16 of the Brief that he never provided a Budget for Kirtland's approval since the partners for twenty (20) years discussed and approved all budgets orally, a practice ratified by Kirtland's actions and failure to object to such practice during

the entirety of those two decades of the Partnership's existence.  Barnhill also notes that budgets were provided for both partners to approve, not just Kirtland as alleged.

22.     Barnhill denies the allegation in paragraph 17 of the Brief that the Partnership's budget was never "Approved by the Partners'" and reiterates that such budgets were discussed and approved by both Barnhill and Kirtland throughout the twenty (20) years of their Partnership, a practice conducted during that entire period.  It makes no sense that Kirtland would supposedly allow no budget to be approved, and then after 20 years, without ever complaining, suddenly be bothered by the operating procedure concerning budget submission that he himself used.

23.     Barnhill admits the allegation in paragraph 18 of the Brief concerning compensation to the extent that it accurately reflects the contents of Section 4.8 of the LPA, but denies that such Section constitutes the modified oral agreement between Barnhill and Kirtland that superseded this provision of the LPA.

24.     Barnhill admits the allegation in paragraph 19 of the Brief only to the extent of the content of Section 4.8 of the LPA, but denies that such Section constitutes the modified oral agreement between Barnhill and Kirtland that superseded this provision of the LPA.  Barnhill further denies the allegation that Kirtland did not receive compensation during the pendency of the Partnership when in fact he skimmed monies from loans to the business for personal use, and received 100% of all revenues resulting from the rental of equipment owned by Kirtland to Partnership clients.

25.     Barnhill admits the allegation in paragraph 20 of the Brief concerning the creation of the two referenced entities, i.e. Soundhouse Management ("Soundhouse") and Backline Rentals ("Backline"), noting that Kirtland urged Barnhill to create them for unspecified tax purposes.

26.     Barnhill denies the allegation in paragraph 21 of the Brief that Soundhouse and Backline were formed as "fictitious alter egos of Barnhill individually," again noting that they were actually formed at the specific urging of Kirtland for both unspecified tax purposes and so that Kirtland could justify certain Partnership expenses so that he could obtain loans via the Partnership that he then used to finance personal debts.  Soundhouse and Backline were the mechanisms through which Kirtland orally agreed to pay Barnhill for actually managing the Partnership business and providing it with certain personally-owned equipment for rental by Partnership customers.

27.     Barnhill denies the allegation in paragraph 22 of the Brief that Barnhill compensated Soundhouse and Backline without notifying Kirtland and getting Approval of the Partners.  Barnhill notes that the payment arrangement was suggested by Kirtland as an oral modification of the LPA, had been in place since 2012, and had been a part of every budget since that time which had also been orally approved by Kirtland.

28.     Barnhill denies the allegation in paragraph 23 of the Brief that Kirtland never approved the decision to hire Soundhouse Management.  Kirtland fails to mention that he urged Barnhill to create and make payments to it for the aforementioned reasons.  It is incomprehensible that Kirtland would, for nearly a decade, ensure that payments would be made to it, but then claim he knew nothing about such agreed payments.  It is implausible that he would allow the business to be managed in contravention of the LPA with respect to such payments for nearly a decade, and provides no explanation, why if the LPA was controlling on this matter, he waited a decade to enforce this provision.

29.     Barnhill denies the allegation in paragraph 24 of the Brief that Kirtland never approved the decision to hire Soundhouse, since such decision was made orally between Kirtland

and Barnhill as had been the practice for all managerial decisions since the formation of the Partnership despite the provisions of Section 4.8 of the LPA.

30.     Barnhill denies the allegation in paragraph 25 of the Brief that Kirtland never approved the decision to pay Soundhouse for the same reason articulated *supra*.

31.     Barnhill denies the allegation in paragraph 26 of the Brief that the decision to compensate Soundhouse was never approved by Kirtland and Barnhill for the same reason articulated *supra*.  Notably such compensation, first to Barnhill, then to Soundhouse, had been a part of every budget since that time which had also been orally approved by Kirtland

32.     Barnhill denies the allegation in paragraph 27 of the Brief that Kirtland never approved the decision to pay Barnhill compensation.  It is absurd to think that Kirtland would believe that Barnhill agreed to manage/operate the Partnership business for two decades without being compensated for doing so.  To be clear, the managing the business was Barnhill's job, not a hobby or an unpaid internship.

33.     Barnhill denies the allegation in paragraph 28 of the Brief that the decision to pay Barnhill was never Approved by the Partners.  That decision was made after Barnhill and Kirtland agreed orally that Barnhill was to receive compensation for actually managing the business. Kirtland's implication that Barnhill's answers to discovery requests somehow support this is untrue and is a mischaracterization of Barnhill's responses to same.  Kirtland's allegations would imply that Kirland wanted and expect that Barnhill would, and was expect to, work for the Partnership business for free (for the 2-decade existence of the Partnership), despite the fact that Kirtland agreed to such payment orally in 2012 and in subsequent years by virtue of the fact that such compensation was also orally approved in budgets from 2012 until Barnhill's ouster as General Partner.

34.     Barnhill denies the allegation in paragraph 29 of the Brief that Kirtland never approved the decision to hire Backline. It is important to reiterate that the payment arrangement involving Soundhouse and Backline had been suggested by Kirtland, as stated *supra*, and had been in place since 2012.  That arrangement had been a part of every budget since that time which had also been orally approved by Kirtland.

35.     Barnhill denies the allegation in paragraph 30 of the Brief that the decision to hire Backline was Barnhill's alone, and that such decision was never Approved by the Partners for the reasons just stated.

36.     Barnhill admits the allegation in paragraph 31 of the Brief concerning rental of certain musical instruments and recording equipment to Partnership customers.  Notably all such equipment was owned by Barnhill personally, not the Partnership.  It is also important to note that Kirtland's personal equipment was also rented, but those loan proceeds were paid as distributions directly to Kirtland.  Essentially, while equipment was rented for use at the Partnership Property, it was not owned by the Partnership.  It is also important to note that Barnhill formed Backline with Kirtland's encouragement to ensure that monies earned from studio rentals would not be commingled with revenues earned from Barnhill-owned equipment rentals.  While Barnhill expected Kirtland to form the same type of entity to address rental of Kirtland-owned equipment, Kirtland never did so.

37.     Barnhill admits the allegation in paragraph 32 of the Brief to the extent that Section 1.1 of the LPA stated that the Business included leasing of equipment, but denies the implication that the equipment that was rented belonged to the Partnership, or that the Partnership owned any equipment of the type that was rented.  As stated *supra*, equipment was rented at the Partnership

Property, but not by the Partnership because it did not own equipment of the type rented, nor did it own the equipment that was rented.

38.     Barnhill denies the allegation in paragraph 33 of the Brief that Barnhill was competing with the Partnership by having Backline rent equipment that the Partnership neither possessed nor owned.  Since the Partnership did not own any of the equipment rented to clients (whether owed by Backline/Barnhill or by Kirtland), and did not possess similar equipment that could have been rented, it is impossible that the rental of same could be considered to be in competition with the Partnership.

39.     Barnhill denies the allegation in paragraph 34 of the Brief that Kirtland never approved the decision to pay Backline compensation since Kirtland orally agreed to the rental of both Backline equipment and Kirtland's equipment, and to distribution of the rental proceeds to the respective owners of said equipment.  This was the procedure used since the inception of the Partnership (with Barnhill's proceeds going to him personally until 2012 and to Backline thereafter).  Essentially, while Kirtland fails to mention that he rented his own personally owned equipment, Kirtland implies that he may receive payments for rent of his personally owned equipment, but that Backline may not receive similar payments for rental of equipment owned by Barnhill and/or Backline.

40.     Barnhill denies the allegation in paragraph 35 of the Brief that the decision to pay Backline was never Approved by the Partners.  The Agreement to pay Backline (and Kirtland personally) was made orally between Kirtland and Barnhill, and despite the provisions of the LPA, with such payments being ratified by Kirtland's (and Barnhill's) acceptance of payment for their respective rental equipment during the two decades that the Partnership existed.

41.     Barnhill denies the allegation in paragraph 36 of the Brief to the extent that Section 4.8 of the LPA dealing with compensation was superseded by the oral agreement to pay a monthly salary to Barnhill for his sole management of the Partnership business, and Kirtland's agreement not to take any salary since he never provided any management service to the Partnership, a function he did not wish to perform.  Furthermore, Kirtland was aware of compensation to Barnhill as a budgeted expense of the business, first to Barnhill individually, and then later, at Kirtland's urging, to Soundhouse, an entity whose formation was urged by Kirtland for purported tax purposes.  Barnhill also denies the allegation that Kirtland did not receive equal compensation since Kirtland used the proceeds of loans to the Partnership not to support the business, but rather to pay his own personal debt obligations.  Kirtland's reference to Responses to Requests for Admissions and deposition testimony asserting contrary responses from Barnhill mischaracterizes the written and oral responses provided by Barnhill.

42.     Barnhill denies the allegations in paragraph 37 of the Brief that any payments to him for managing the Partnership business was unauthorized, but admits that such payments were listed on the Partnership's books as expenses.  Barnhill denies the allegation that doing so improperly inflated the expenses of the Partnership because such payments were orally Agreed by the Partners and had been expensed in such a manner during the entirety of Partnership's existence. It is curious that in the two decades that the business had been in operation, Kirtland only objected to such accounting and used it as a pretext to seize the business and liquidate all interests in it to his personal benefit.  Barnhill is unable to admit or deny the allegation concerning any violation of debt service coverage ratio covenants since Kirtland was the only party privy to the terms of the loans secured by the Property.  Although Barnhill arguably approved such loans, he did so without knowing the contents of the loan agreement Kirtland made with URP's lenders because of threats

Kirtland made against Barnhill if he refused to go along with such loans.  Barnhill is unable to

admit or deny that the loans unilaterally negotiated by Kirtland were "personally guaranteed by"

him.

43.    Barnhill denies the allegation in paragraph 38 of the Brief that any improper

accounting occurred or that unauthorized payments were made to himself and his Affiliates

resulting in the Partnership failing to meet certain debt service coverage ratios thereby causing a

loan default.  Again, Kirtland unilaterally negotiated the terms of the subject loans, and forced

Barnhill to agree to such loans without informing him of such terms; and Kirtland alone was aware

of the subject loan's covenants while simultaneously being aware of the obligations to pay Barnhill

for operating the Partnership business.  Essentially, any default, if any, was caused by Kirtland's

actions and failure to deal with Barnhill and URP's lenders in good faith, and with full transparency

and candor in Kirtland's transactions with same.

44.    Barnhill admits the allegation in paragraph 39 of the Brief to the extent of the

content of the Section 7.4 of the LPA, the provision concerning the deadline for filing federal and

state tax returns.

45.    Barnhill admits the allegation in paragraph 40 of the Brief concerning the dates the

referenced tax returns were filed, but notes that Kirtland was fully aware that the delay in filing

was caused by operational emergencies that made it impossible for the Partnership to file such

returns (and pay the associated taxes) on time.  Kirtland orally agreed to allow such returns to be

filed (and associated taxes to be paid) late.

46.    Barnhill admits the allegation in paragraph 41 of the Brief to the extent of the

content of Section 4.6 of the LPA dealing with the Partnership's duty to pay its real property taxes,

but denies the allegation that Section 7.4 of the LPA referenced in the footnote to that paragraph

mentions any duty to pay real property taxes since that Section deals only with the requirement to *file* federal, state, and local tax returns by a specified date.

47.     Barnhill admits the allegation in paragraph 42 of the Brief concerning the referenced suit filed by Richardson Independent School District for the stated reason.

48.     Barnhill is unable to admit or deny the allegation in paragraph 43 of the Brief because the Plaintiff controls all records of the Partnership and because the allegation does not refer to any specific instance where the Partnership failed to timely pay real property taxes, and thus the allegation is vague and ambiguous.  Barnhill further denies the allegation that he "failed to cause the Partnership to pay" said taxes on time, noting that the decision to pay certain taxes late was made by both Kirtland and Barnhill as the two partners in the business (i.e. that such decision was "Approved by the Partners")  because the money earmarked for any such payment or payments was, or may have been, used to pay other emergency operational expenses.

49.     Barnhill is unable to admit or deny the allegation in paragraph 44 of the Brief concerning interest and attorney fees being expensed to the Partnership because, as stated *supra*, the Plaintiff controls all records of the Partnership.

50.     Barnhill admits the allegation in paragraph 45 of the Brief to the extent of the language in Section 4.5(b) of the LPA concerning the maintenance of reserve monies intended to pay operating expenses, but notes that Kirtland conveniently fails to mention that that Section of the LPA actually states that such reserves are to be maintained "[t]o the extent funds of the Partnership are sufficient therefor[.]"  In the event such funds are not sufficient, maintenance of a reserve is not possible as Kirtland is aware.

51.     Barnhill is unable to admit or deny the allegation in paragraph 46 of the Brief since Plaintiff controls all records of the Partnership, but denies that Barnhill "cause[d] the Partnership to pay its taxes" in an untimely manner.

52.     Barnhill denies the allegation in paragraph 47 of the Brief concerning inaccuracies showing that half of capital contributions for property taxes were paid by Barnhill.

53.     Barnhill is unable to admit or deny the allegations in paragraph 48 of the Brief dealing with the timing of payment of franchise tax reports, the timing forfeiture of the right to transact business, and the timing of when such matter was remedied because Plaintiff controls all records of the Partnership.

54.     Barnhill admits the allegation in paragraph 49 of the Brief to the extent of the language referenced in Section 4.7 of the LPA.

55.     Barnhill denies the allegation in paragraph 50 of the Brief that he failed to operate the business in accordance with the aforementioned Section 4.7 of the LPA.

56.     Barnhill admits the allegation in paragraph 51 of the Brief to the extent of the language contained in Section 6.2 of the LPA dealing with pro-rata distribution of cash flows from operations when available.

57.     Barnhill denies the allegation in paragraph 52 of the Brief concerning a failure to distribute said cash flows.

58.     Barnhill denies the allegation in paragraph 53 of the Brief that he acted in contravention of the LPA by causing the Partnership to compensate Barnhill and his Affiliates without Approval of the Partners with equal compensation to Kirtland.  Notably, Kirtland and Barnhill orally agreed for two decades to pay Barnhill for managing the Partnership business, and

that Kirtland would take nothing for his non-involvement in any managerial function.  Barnhill and Kirtland each received proceeds for the rental of their respectively-owned equipment.

59.    Barnhill denies the allegation in paragraph 54 of the Brief concerning a failure to perform duties by paying improper compensation to himself (and later to Soundhouse) and to Backline (for rental of personally owned equipment), and that Barnhill left the business with inadequate cash reserves.  Again, as previously sated, Kirtland orally agreed to payments to Barnhill for his management of the Partnership, payments to Kirtland and Barnhill for the rental of their respectively-owned equipment, and that certain times.  Further, cash reserves were maintained when sufficient funds were available to maintain such reserves and when such reserves were not used for other operational emergencies (the use of which was also orally agreed to by Kirtland).

60.    Barnhill denies the allegation in paragraph 55 concerning misapplication and misappropriation of Partnership cash flow in a manner violating the LPA for the reasons mentioned heretofore.

61.    Barnhill admits the allegation in paragraph 56 of the Brief to the extent of the language in Section 7.2 of the LPA dealing with keeping "full and accurate books and records…."

62.    Barnhill denies the allegation in paragraph 57 of the Brief that he kept "an alternate set of books and records."  Further, Barnhill denies that the referenced Responses to Requests for Admissions and Deposition Transcript indicate that he did.  Any assertion to the contrary is a knowing false statement to this Court.

63.    Barnhill denies the allegation in paragraph 58 of the Brief concerning contradictions in the Partnership's financial statements and tax returns.

64.     Barnhill denies the allegation in paragraph 59 of the Brief that merely restate the allegation in the previous paragraph.

65.     Barnhill denies the allegations in paragraph 60 of the Brief concerning alternate books and records, secreted cash, and keeping unreported income, noting that Kirtland and Barnhill had both kept cash rental income for their respectively owned equipment that did not belong to the Partnership.

66.     Barnhill denies the allegations in paragraph 61 of the Brief concerning inaccurate and incomplete books and records in violation of the LPA.

67.     Barnhill denies the allegations in paragraph 62 of the Brief concerning the content of his supposed deposition testimony, noting that he never stated he provide an alternate set of books and records to the Partnership's accountants.  This is a disputed contention that Kirtland continues to make without any support.

68.     Barnhill is unable to admit or deny the allegations in paragraph 63 of the Brief concerning R. Scott Bryan's deposition testimony that Branhill never provided an alternate set of books and records, but admits that he provided him with the set of only books and records that he had.

69.     Barnhill denies the allegation in paragraph 64 of the Brief concerning the existence of an alternate set of books and records and that such indicate a discrepancy in generated versus reported gross income.

70.     Barnhill denies the allegation in paragraph 65 of the Brief that he misappropriated any unreported revenue.

71.     Barnhill is unable to admit or deny the allegation in paragraph 66 of the Brief with respect to the amounts showing on Form 1099's for Barnhill as compared to amounts paid to Kirtland since all records of the Partnership are in the possession of Kirtland.

72.     Barnhill is unable to admit or deny the allegation in paragraph 67 of the Brief with respect to amounts supposedly paid to Barnhill and/or not paid to Kirtland since all records of the Partnership are in the possession of Kirtland, but notes that the amount asserted in the previous paragraph do not match that stated in this paragraph.

73.     Barnhill denies the allegation in paragraph 68 of the Brief that he converted a large practice room into a living space and lived in it for years without paying rent, thereby depriving the business of rent for that room.  Barnhill asserts that the only times he ever stayed overnight at the Property was during all-night practice/recording sessions when he stayed on a cot in his office, noting that at all times he resided in his personal residence that he shares with his wife and children which is located only blocks from the Property.  Assertions to the contrary are knowingly false. Furthermore, his presence during such all-night sessions was absolutely necessary as Kirtland refused to be involved in such customer service matters.  Asserting that Barnhill had to pay rent to remain on site to ensure the security of the Property and the client during such sessions is absurd.

74.     Barnhill denies the allegation in paragraph 69 of the Brief that Section 4.11 of the LPA states that Barnhill could be removed for failure to perform his duties as no such reason is given in the seven (7) enumerated reasons providing grounds for removal of the General Partner. Barnhill admits the allegations in the balance of the paragraph to the extent of the language contained in that Section of the LPA.

75.     Barnhill admits the allegation in paragraph 70 of the Brief to the extent of the language of Section 7.3 of the LPA with respect to Kirtland's ability to audit or have audited the books and records of the Partnership.

76.     Barnhill admits the allegation in paragraph 71 of the Brief to the extent that Kirtland sent Defendant the referenced letter demanding adjustment of the Partnership capital accounts, but denies the allegations contained therein.

77.     Barnhill admits the allegation in paragraph 72 of the Brief to the extent of the purported content of the referenced demand letter, but denies the alleged violations of the LPA contained therein.

78.     Barnhill denies the allegation in paragraph 73 of the Brief that he kept an alternate set of books that supposedly included the referenced documents, records, and information. Barnhill notes that the only reference made to "skimmed" funds were those in a text communication (used by Kirtland in earlier pleadings) discussing monies skimmed *by Kirtland* from certain loan proceeds).  Barnhill further denies that he has kept Partnership funds for himself, noting that the only monies that he paid directly to himself via Backline were for rental of equipment he, and not the Partnership, owned.  The allegation in this paragraph also fails to take into account the same type of rental proceeds paid directly to Kirtland for equipment he owned, and which he fails to mention.

79.     Barnhill admits the allegation in paragraph 74 of the Brief to the extent of the language of Section 4.11 of the LPA, but denies that the purported ability to remove Barnhill for failure to perform his duties is enumerated in that Section of the LPA.

80.     Barnhill admits the allegation in paragraph 75 of the Brief that Barnhill was removed from his position of General Partner on the referenced date by the referenced Notice of Removal, but denies the reasons for said removal articulated therein.

81.     Barnhill is unable to admit or deny the allegation in paragraph 76 of the Brief to the extent that he was not present for or make any vote toward election of QPM as the supposedly "elected" new General Partner, and his own re-designation as "Limited Partner."

82.     Barnhill admits the allegation in paragraph 77 of the Brief only to the extent of the content of Section 4.11 of the LPA, but asserts that the seizure of one percent (1%) of his ownership interest and giving it to an entity that is upon information and belief to be owned, controlled, and/or influenced by Kirtland on grounds that are false and unsubstantiated was inappropriate.

83.     Barnhill admits the allegations in paragraph 78 of the Brief only to the extent of the language contained in the referenced sections of the LPA (i.e. Sections 4.5(a), 4.5(b), 4.7 4.8, and 6.2), but denies the implication that he violated said Sections.

84.     Barnhill denies the allegations in paragraph 79 of the Brief that he failed to comply with the aforementioned sections of the LPA.

85.     Barnhill admits the allegation in paragraph 80 of the Brief to the extent of the language contained in Section 7.2 of the LPA concerns the keeping of full and accurate books of the Partnership.

86.     Barnhill admits the allegation in paragraph 81 of the Brief to the extent of the content of the referenced section of the Texas Business Organizations Code, but denies the applicability thereof.

87.     Barnhill admits the allegation in paragraph 82 of the Brief to the extent of the content of the referenced section of the Texas Business Organizations Code, but denies the applicability thereof.

88.     Barnhill denies the allegation in paragraph 83 of the Brief that he refused to allow Kirtland to examine the Partnership's records.

89.     Barnhill admits the allegation in paragraph 84 of the Brief to the extent of the reasons provided in the referenced Motion to Compel, but denies the allegations contained therein with respect to any "violation."

90.     Barnhill admits the allegation in paragraph 85 of the Brief concerning the Order granting Kirtland's Motion to Compel.

91.     Barnhill admits the allegation in paragraph 86 of the Brief to the extent of the content of the referenced court order.

92.     Barnhill admits the allegation in paragraph 87 of the Brief to the extent of the content of the referenced court order.

93.     Barnhill denies the allegation in paragraph 88 of the Brief that he ignored said court order, but admits that Kirtland filed the referenced motion for sanctions.

94.     Barnhill admits the allegation in paragraph 89 of the Brief to the extent of the content of the Section 5.2 of the LPA, but denies the allegations in the balance of the paragraph.

95.     Barnhill denies the allegation in paragraph 90 of the Brief that he violated Section 5.2 of the LPA, noting that he was unable to keep Partnership clients from contacting him and sending payments to him, keeping creditors of the Partnership from contacting him and demanding payment, nor did he ever "bind the Partnership in any manner" after his removal.

96.     Barnhill denies the allegation in paragraph 91 of the Brief, noting that any allegation of "violence and intimidation" is an outright lie that is intended to prejudice this Court against the Defendant.  Furthermore, Barnhill is aware that QPM did little to nothing to ever attempt to operate the business, noting that it, and Kirtland, ceased paying the business's bills, accepting and/or depositing rent payments, maintaining or upkeeping the Property, allowed illegal drug-related activities to occur on Partnership Property.  The sum of these and other actions or omissions on the part of Kirtland and QPM caused the business to decline into bankruptcy that was filed roughly one year after Barnhill's ouster as General Partner.  For Kirtland and QPM, it was not a business to be run, but rather an entity to be plundered.

97.     Barnhill denies the allegation in paragraph 92 of the Brief that Kirtland and QPM had no access to the building to determine the amount of revenue the Partnership generated.

98.     Barnhill denies the allegations in paragraph 93 of the Brief, and reiterates that the allegations of "violence and intimidation" and embezzlement are false.

99.     Barnhill denies the allegation in paragraph 94 of the Brief, noting that the only income not being deposited was that earned by Barnhill / Backline and Kirtland for the rental of their respectively owned equipment, monies that did not belong to the Partnership.  All rehearsal / recording room rental revenue was deposited, and monies in online payment accounts was turned over to Kirtland / QPM for deposit.  Assertions to the contrary are false.

100.    Barnhill denies the allegation in paragraph 95 of the Brief concerning a pre-bankruptcy petition "precipitous drop in deposits into the Partnership's bank account."  Barnhill notes that the only time drops in revenues occurred was when Partnership Properties, at the behest of Kirtland, were closed, and sold, leading to the elimination of their revenue streams.

101.   Barnhill is unable to admit or deny the allegation in paragraph 96 of the Brief since Kirtland controls all records of the Partnership, but asserts that an increase in deposits is unlikely given that Kirtland and QPM stopped regular collection of rents and failed to deposit money in online rent payment accounts.

102.   Barnhill denies the allegation in paragraph 97 of the Brief that he embezzled any Partnership revenue.

103.   Barnhill denies the allegation in paragraph 98 of the Brief that he caused a default on a Partnership loan from PlainsCapital Bank, the provisions of which Kirtland kept secret from Barnhill, and to which Barnhill only agreed after threats from Kirtland.

104.   Barnhill denies the allegations in paragraph 99 of the Brief, noting that he never "screamed and cursed" at that bank's loan officer or created any damage to the Partnership's relationship with its lender, noting that the only member that had any dealings with said bank was Kirtland.

105.   Barnhill denies the allegation in paragraph 100 of the Brief that Barnhill denied Kirtland access to the Property, noting that Kirtland had an office space therein and full access to the Partnership's hard and soft copy files.

106.   Barnhill denies the allegations in paragraph 101 of the Brief, particularly that Barnhill threatened Kirtland, intimidated him with a firearm, and physically assaulted him. Curiously, no police reports of such supposed actions have been presented to support these claims. As previously mentioned, Barnhill did confront two persons, one of whom was later determined to be Kirtland, during a late-night / early-morning burglary of the Partnership Property. Also, Kirtland did likely observe Barnhill's firearm during a meeting with a service provider when Barnhill went up a ladder through a roof hatch and his shirt lifted, revealing the firearm. However,

an armed confrontation of a burglar and inadvertently allowing a firearm to be seen by a service provider does not constitute brandishment of same.

107.    Barnhill denies the allegations in paragraph 102 of the Brief that he ever attacked a process server.

108.    Barnhill denies the allegation in paragraph 103 of the Brief that he shouted expletives at a loan officer serving a Partnership loan.

## III.    ARGUMENTS AND AUTHORITIES

109.    "Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[7]

110.    "The appropriate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"[8]

111.    "If the non-movant presents summary judgment evidence creating a genuine issue of material fact, summary judgment is not appropriate."[9]

112.    Here, Barnhill asserts that a genuine issue of material fact does indeed exist.

113.    Kirtland has consistently relied on the purported fact that the LPA must stand as written because certain provisions require that any changes may only be made in writing by Kirtland if he agrees to them. (e.g. Sections 5.3 and 11.1 of the LPA).

---

[7] *Mugworld, Inc. v. G.G. Marck & Assocs*., 563 F. Supp. 2d 654, 656-57 (E.D. Tex. 2007) citing FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S. Ct. 1545, 143 L. Ed.2d 731 (1999).
[8] *Id*. at 657 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)).
[9] *Id*. (citing *Ragas v. Tennessee Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998)).

114.    However, for more than twenty years, the practice of conducting business was done in a manner that Kirtland and Barnhill orally agreed to during the entire period of the Partnership's existence.  Such conduct or practice over the entire pendency of the partnership with respect to oral agreements with respect to everything from compensation to budget preparation and presentation ratified said agreements and/or managerial practices.

115.    It is important to note that "[t]he terms of a written agreement may be modified by a later oral agreement or by the parties' course of conduct, when such agreement is founded on sufficient consideration."[10]  Here, such consideration may be seen in the work Barnhill performed in managing the Partnership business.

116.    Texas law on this matter is clear that "an oral agreement may supersede a written agreement not required by law to be in writing, even if the written agreement prohibits oral modification."[11]  The facts and circumstances of the instant case indicate that such law is applicable here.

117.    Further, for the modification of a contract to be valid, the parties must manifest an intent to modify the original agreement.[12]

118.    Here, it is clear, whether by fact or by inference, that Kirtland and Barnhill intended to modify the original agreement.  It is inconceivable that Kirtland would allow Barnhill to manage their shared partnership business for more than twenty years in the manner of which he now

---

[10] *In re Carbo Ceramics*, Nos. 20-31973, 21-3031, 2023 Bankr. LEXIS 984, at *13-14 (Bankr. S.D. Tex. Apr. 12, 2023) citing *Underwood v. Colony Bank*, 362 Ga. App. 548, 553, 869 S.E.2d 535 (2022).  See also *Bennu Oil & Gas, LLC v. Bluewater Indus., L.P. (In re ATP Oil & Gas Corp.)*, Nos. 12-36187, 14-3001, 2015 Bankr. LEXIS 2350, at *120 (Bankr. S.D. Tex. July 15, 2015) ("Written contracts … may be modified by oral contracts and by the conduct of the parties, and this is true even when the written contract contains the provision that [a party]… is liable only if the [contract modifications]… are in writing.")
[11] *Heritage Org., LLC v. Canada (In re Heritage Org., LLC)*, Nos. 3:06-CV-0578-H, 304-35574-bjh-11, 04-03338, 2006 U.S. Dist. LEXIS 69288, at *9 (N.D. Tex. Sep. 14, 2006)
[12] *In re Carbo Ceramics*, at *14.

complains, and of which he was obviously aware during that entire time.  Budgets were prepared and presented orally rather than in writing, but only after twenty years of such practice does he complain.  He initially received a written budget or budgets, but later, did not receive them.  Instead budgets (which were essentially the same from year to year) were discussed and Approved by the Partners.  Kirtland admittedly allowed such practice to continue for twenty years without acting or demanding that such practice change.  Further, he continued to serve as the source of monies to rectify late payment of taxes which he complained happened again and again, but never acted to change this practice.  He knowingly permitted his business partner and his Affiliates to receive compensation for twenty years without receiving equal compensation, and agreed not to accept such due to his admitted lack of participation in the business's operations.  It is further implausible that a business owner, like Kirtland, would expect his Partner to work full-time as his business's General Partner and manager without compensation during that entire period.  To now effectively claim that for more than twenty years he just didn't know that was happening is absurd.

119.   With respect to the Deemed Admissions on which Kirtland relies to support his Motion, Barnhill reiterates that deemed admissions may be withdrawn, which is favored by federal district courts because it allows the case to be resolved on its merits rather than on procedural error, and further does not prejudice Kirtland, mainly because his counsel had received such responses only 5 days late, and at a time when the Second State Court case had just begun.[13]

120.   Under Texas law, where summary judgment is based on minimally late Responses to Requests for Admissions, a "trial court should… allow[]… deemed admissions to be withdrawn."[14].  Doing so ensures that due process is granted, so that admissions are used as

---

[13] Gentry, at *12
[14] *Marino v. King*, 355 S.W.3d 629, 633 (Tex. 2011).

intended, and keeps a party from trying to "use[] deemed admissions to try to preclude presentation of the merits of a case."[15]

121.    Furthermore, as previously stated, Texas law dictates that "[a] traditional motion for summary judgment 'must stand or fall on [its] own merits, and the non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right to judgment."[16]   Here, Kirtland offers no evidence of any undue prejudice with regard to the Responses to Requests for Admissions filed only a few days late.   Also, Barnhill's intends to cause his counsel to file a *Motion for Withdrawal of Deemed Admissions* contemporaneously with the filing of the instant Response.

122.    Finally, also as previously stated, the fact that the late-filed *Answer to Second Amended Complaint* was stricken does not mean that all allegations in said Complaint are admitted. Allegations were not admitted for the simple reason that they had already previously been answered in the aforementioned state court litigation.   After removal, having already answered in the state court, Defendants were not required to file additional pleadings in federal court."[17]

123.    As for Kirtland's demand for attorney's fees, Barnhill asserts that given the foregoing, such relief is inappropriate because such relief is based on a recovery of fees that relate to a claim on an oral or written contract.[18]   As stated *supra*, the contract in question, i.e. the LPA, has been orally modified with respect to all of the critical matters underlying Kirtland's claim.

124.    Furthermore, attorney's fees must be "reasonable."[19]   Here, Barnhill asserts that any such fees are not reasonable, and are designed to deplete any remaining moneys that are the

---

[15] *Id*. at 634 (citing *Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex. 2005) (per curiam)).

[16] *Ramirez* at 862 (citing *Amedisys* at 511-12.)

[17] *Nelson v. Nationwide Mut. Ins. Co*., No. 3:11-cv-223-DPJ-FKB, 2012 U.S. Dist. LEXIS 13809, at *20 (S.D. Miss. Feb. 6, 2012).  See also Fed. R. Civ. P. 81(c)(2) ("After removal, repleading is unnecessary unless the court orders it.")

[18] Tex. Civ. Prac. & Rem. Code § 38.001(b)(8).

[19] Tex. Civ. Prac. & Rem. Code § 38.003.

proceeds of Kirtland's seizure and liquidation of the Partnership business.  Further, Kirtland has provided no documentation supporting the claim for fees and identifying the nature of such (i.e. invoicing showing the dates, times, persons, hourly rates, number of hours, description of supposed services provided, etc.).  Without such documentation accounting for such fees (which are not calculated), the reasonableness of any such fees is merely speculative.

### IV.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Vince Barnhill prays that the Court will deny the relief requested in *Plaintiff John Kirtland's Motion for Partial Summary Judgment Against Defendant Vince Barnhill, and the Brief in Support* of same.  He further prays that the Court shall grant to him any such other and further relief to which he may show himself justly entitled.

Dated:  April 15, 2024.

Respectfully submitted,

  */s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
ATTORNEYS FOR VINCENT BARNHILL

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 15, 2024, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case.

  */s/ Joyce W. Lindauer*
Joyce W. Lindauer